IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 1:19-cv-00017-LTB

LEIGH ANN STONEFIELD,

    Plaintiff,

v.

CHIEF EVAN LOPEZ,
SERGEANT EDUARDO RODRIGUEZ,
OFFICER ROBERT PINO, and
THE CITY OF MONTE VISTA, COLORADO,

    Defendants.

_____

ORDER
_____

Plaintiff alleged that her ex-husband violated protections orders. She was

charged with false reporting to authorities related to her allegations. She sued,

alleging that Defendants violated certain Constitution rights surrounding her

charge. This matter is before me on Defendants' Motion to Dismiss. ECF No. 13. I

have jurisdiction pursuant to 28 U.S.C. § 1331. After considering the parties'

arguments and exhibits, I grant Defendants' Motion.

## I.    BACKGROUND

Initially, Plaintiff disputes Defendants' use of two police reports that

Defendants attached to their Motion. ECF No. 13 at 2 n.1 & 3 n.2; Pl.'s Resp., ECF

No. 20 at 2 n.1. "A district court may consider documents (1) referenced in a

complaint that are (2) central to a plaintiff's claims, and (3) indisputably authentic

1

when resolving a motion to dismiss without converting the motion to one for summary judgment." *Thomas v. Kaven*, 765 F.3d 1183, 1197 (10th Cir. 2014). Defendants' exhibits are referenced in the Amended Complaint and are central to Plaintiff's claims. *E.g.*, Am. Compl., ECF No. 12 at ¶¶ 18–30.

Plaintiff claims that she did dispute the truthfulness of the reports in her Amended Complaint. ECF No. 20 at 2 n.1. However, while she claimed that the reports may have been created to support alleged retaliatory conduct, she did not in fact allege in the Amended Complaint that the reports were indeed false or inauthentic. As such, I consider Defendants' attached exhibits without converting the Motion into one for summary judgment. *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1385 (10th Cir. 1997) (document not attached to complaint was properly considered when plaintiff frequently referred to the document and did not dispute its authenticity).

Plaintiff obtained two criminal protection orders and one permanent civil protection order against her ex-husband Fred Chambers which prohibited him from contact with Plaintiff or her children. ECF No. 12 at ¶ 12. The criminal protection orders were issued in Rio Grande County on November 3, 2015 and June 7, 2016, and the civil protection order was issued in Alamosa County on July 24, 2017. *Id.* On December 31, 2016, and other occasions, Plaintiff claimed that Fred Chambers violated the protection orders. *Id.* at ¶ 13. Plaintiff sought assistance from the Monte Vista Police Department to enforce the civil protection order five times: March 21, 2016; June 7, 2016; December 8, 2016; December 31, 2016; and January

5, 2017. *Id.* at ¶ 14. Fred Chambers was prosecuted for violating the restraining orders and for felony stalking regarding the alleged June 7 violation. *Id.* at ¶¶ 14, 41.

Plaintiff alleged that the Defendants—who handled investigations surrounding her claims—had strong social relationships with Fred Chambers' mother. *Id.* at ¶ 16. Plaintiff added that as a result of these relationships, the individual Defendants were disposed positively to Fred Chambers and negatively disposed to her. *Id.* at ¶ 17.

On December 31, 2016, Defendant Officer Robert Pino was dispatched and wrote an incident report. Ex. A to Defs.' Mot., ECF No. 13-1. Plaintiff's daughter noted to Officer Pino by phone that Plaintiff's son saw Fred Chambers driving his brown Dodge pickup truck by their house. *Id.* at 1. Shortly after Officer Pino ended his conversation with Plaintiff's daughter, Plaintiff called him and said that something needed to be done because she was in fear for her and her children's lives. *Id.* Officer Pino visited the residence and spoke with Plaintiff's son. *Id.* at 2. Officer Pino wrote that Plaintiff's son "stated that he was outside when he noticed Fred's truck . . . driving really slow . . . [but] stated that he did not see Fred in the truck." *Id.*

On January 5, 2017, Plaintiff followed up with the Monte Vista Police Department and spoke with Defendant Sergeant Eduardo Rodriguez to follow up on the incident on December 31. ECF No. 12 at ¶ 18. Less than an hour after speaking with Sergeant Rodriguez, Plaintiff called 911 to report that she saw Fred Chambers

in the alley behind her house. *Id.* at ¶ 19; Ex. B to Defs.' Mot., ECF No. 13-2.

Sergeant Rodriguez was dispatched and wrote an incident report. ECF No. 12 at ¶¶

20, 21. Plaintiff reported to Sergeant Rodriguez that she saw Fred Chambers

wearing a blue vest and ball cap entering a white Ford truck that eventually sped

away. *Id.* Sergeant Rodriguez wrote that he did not see acceleration marks where

Plaintiff stated Fred Chambers drove away. ECF No. 13-2 at 3. She pointed out the

parked truck to Sergeant Rodriguez as they were in the alley. ECF No. 12 at ¶ 21.

She stated that Fred Chambers' father James had returned driving the truck and

parked it in the alley. *Id.*

Sergeant Rodriguez spoke with a witness who told him that she noticed the

same white truck frequently parked across the street from Plaintiff's house and

other times parked down the street. *Id.* at ¶ 22. The witness continued that she did

not see who was in the truck that day, but that she saw the truck driven around the

house frequently, sometimes with an older male driving and sometimes a middle-

aged male driving. *Id.*

Additionally, Sergeant Rodriguez spoke with other neighbors who had a

security camera at their house. *Id.* at ¶ 23. Sergeant Rodriguez wrote that the

camera footage showed James Chambers in the white truck around the time that

Plaintiff called to report that she saw Fred Chambers violating the protection order.

*Id.* The footage showed Plaintiff entering her home from her car and then the white

truck slowly backing out of the alley and driving away. *Id.* The neighbors noted that

they saw the white truck frequently driven by James Chambers "because he usually

goes to his son's house located next to [Plaintiff's] residence . . . to make sure it has heat." ECF No. 13-2 at 3, 4. The neighbors said that they had not seen Fred Chambers around the house in a long period of time. ECF No. 12 at ¶ 24. They added that there was another truck with a similar make and model to Fred's truck that they saw blocks from Plaintiff's residence. *Id.* James Chambers stated that he visited the nearby residence several times a day to ensure that the home is being warmed by a fire to in order to avoid high heating bills. *Id.* at ¶ 27.

On January 7, another officer obtained a statement from Fred Chambers' co-worker who stated that Fred was at his shop the morning of January 5 and worked there for most of the day. *Id.* at ¶ 26. James Chambers stated that Fred never used the truck that day. *Id.* at ¶ 27. Sergeant Rodriguez provided a supplemental narrative to his report. ECF No. 13-2 at 5. Dorothy Chambers shared a photo with him of a truck similar to Fred's truck that was seen blocks from Plaintiff's residence. ECF No. 12 at ¶¶ 25, 28. However, Plaintiff alleged that "[o]n information and belief, Ms. Dorothy Chambers provided a picture of the look-a-like truck that was a brown Dodge . . . [s]he did not provide any information related to the white Ford Mr. Chambers was driving that day." *Id.* at ¶ 29.

Sergeant Rodriguez added that Dorothy was given a copy of camera footage of Fred at the shop during the time Plaintiff alleged to have seen him near her house. ECF No. 13-2 at 5. Sergeant Rodriguez viewed the footage. *Id.* He noted that cameras from the shop showed Fred's brown Dodge truck in the parking lot and Fred working in the shop wearing a t-shirt and ball cap. *Id.* Sergeant Rodriguez

wrote that he requested the District Attorney's Office to review his report for possible charges against Plaintiff for false reporting to authorities. *Id.* at 6; ECF No. 12 at ¶ 30.

On January 17, the criminal protection order against Fred Chambers was vacated and the charges against him for violating the restraining orders and for felony stalking related to the June 7 allegation were dismissed. ECF No. 12 at ¶ 42. Plaintiff alleged that these actions occurred based on Sergeant Rodriguez's incident report. *Id.*

The District Attorney in Rio Grande County chose not to file the misdemeanor charge of false reporting against Plaintiff. *Id.* at ¶ 43. Plaintiff alleged that Defendant Chief Evan Lopez determined that the charge be filed in Monte Vista Municipal Court. *Id.* at ¶¶ 31, 44. After Plaintiff expressed disbelief of the charges, Chief Lopez told her by phone that he would support his officers. *Id.* at ¶ 39.

On February 11, 2017, Ms. Stonefield was served with a Summons and Complaint signed by Sergeant Rodriguez referencing a violation date of January 5, 2017, charging her with false reporting to authorities in violation of Monte Vista City Code § 8-2-60(a)(2). *Id.* at ¶¶ 31, 32. Two officers of the Monte Vista Police Department called for Plaintiff and brought the summons to her house, requiring her to sign the summons prior to leaving. *Id.* at ¶¶ 54, 55. Plaintiff alleged that she "felt that she would be arrested if she did not sign the summons and was certainly

not free to leave during the time that the officers waited for her to sign the summons." *Id.* at ¶ 56.

On May 9, 2017, the attorney for the City of Monte Vista moved to dismiss the case against Plaintiff due to a lack of evidence, namely the failure to produce videos showing Fred Chambers working in a shop during the time Plaintiff alleged to have seen him near her house. *Id.* at ¶ 46. Since she was charged, Plaintiff alleged that she has "restrained from reporting [Fred] Chambers' repeated violations of his protection order for fear of retaliation by the Monte Vista Police Department and the named Defendants, including most recently on December 14, 2018." *Id.* at ¶ 50.

Plaintiff brought suit in January 2019, alleging three claims of relief in her Amended Complaint: (1) deprivation of her First Amendment right to petition the government for a redress of grievances in violation of 42 U.S.C. § 1983 against all Defendants; (2) deprivation of her Fourteenth Amendment right to equal protection of the laws in violation of 42 U.S.C. § 1983; and (3) deprivation of her Fourteenth Amendment right to procedural due process in violation of 42 U.S.C. § 1983. ECF No. 12 ¶¶ 65–86. Defendants move to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). ECF No. 13.

## II.    FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)

I accept the "well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007). To avoid dismissal under Rule

12(b)(6), "a complaint must contain enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that enables the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Conclusory statements and legal conclusions are not accepted as true; mere "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" will not suffice. *Khalik*, 671 F.3d at 1190–91 (quoting *Twombly*, 550 U.S. at 555). As such, when examining a complaint under Rule 12(b)(6), I disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable. *Id.* at 1191.

## III.   ANALYSIS

In the Motion, the individual Defendants argue that they are entitled to qualified immunity and Defendant City of Monte Vista argues that Plaintiff failed to adequately state a claim for municipal liability.

### A.  The Individual Defendants Are Entitled to Qualified Immunity.

A person acting under color of state law who "subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights,

privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . ." 42 U.S.C. § 1983. "Individual defendants named in a § 1983 action may raise a defense of qualified immunity, which shields public officials from damages actions unless their conduct was unreasonable in light of clearly established law." *Doe v. Woodard*, 912 F.3d 1278, 1289 (10th Cir.), cert. denied sub nom. *I.B. v. Woodard*, 139 S. Ct. 2616 (2019) (quoting *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014)).

"Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (quoting *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015)) (internal alterations and quotations omitted). In a motion to dismiss based on qualified immunity, the burden is on the plaintiff to show that: (1) a constitutional violation occurred; and (2) that the constitutional right that was violated was clearly established at the time of the alleged violation. *Id.*; *Lybrook v. Members of Farmington Mun. Sch. Bd. of Educ.*, 232 F.3d 1334, 1337 (10th Cir. 2000) ("When qualified immunity is raised in a Fed. R. Civ. P. 12(b)(6) motion, the plaintiff must carry the burden of establishing that the defendant violated clearly established law.").

"A constitutional right is clearly established if it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Id.* (quoting *Mullenix*, 136 S.Ct. at 308). Generally, existing precedent must place beyond debate the constitutional question, either through a case on point from a court of mandatory authority or through the clearly established weight of

authority from a court of persuasive authority. *Id.* (citing cases). The salient question is whether the state of the law gave the defendants a fair warning that their alleged actions towards the plaintiff was unconstitutional. *Id.* (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).

Officer Pino, Sergeant Rodriguez, and Chief Lopez argue that they are entitled to qualified immunity. They argue that Plaintiff failed to satisfy her burden as to her First Amendment retaliation claim, her equal protection claim, and her procedural due process claim.

### 1. Plaintiff Did Not Sufficiently Allege A First Amendment Retaliation Violation.

One of the most basic of constitutional rights is the right to petition the government for a redress of grievances. *Meyer v. Bd. of Cty. Comm'rs of Harper Cty., Okla.*, 482 F.3d 1232, 1243 n.5 (10th Cir. 2007). This may take the form of presenting a criminal complaint to authorities. *Id.* ("While Plaintiff did not have a right to force the local prosecutor to *pursue* her charges, she possessed the right to *access* judicial procedures for redress of her claimed wrongs and to set in motion the governmental machinery." (quoting *Howse v. Atkinson*, 2005 WL 1076527, No. CIV.A. 04–2341 (D.Kan. May 4, 2005)) (emphasis in original) (internal quotations omitted)).

To establish a retaliation claim under 42 U.S.C. § 1983 a Plaintiff must allege that: (1) she was engaged in a constitutionally protected activity; (2) the defendant's action caused her to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the defendant's action was

substantially motivated as a response to her exercise of her First Amendment speech rights. *Becker v. Kroll*, 494 F.3d 904, 925 (10th Cir. 2007) (citing *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000)). "She also must plead and prove the absence of probable cause for the prosecution." *Id.*; *Hartman v. Moore*, 547 U.S. 250, 265–66 (2006) (absence of probable cause must be pleaded and proven to support an action under 42 U.S.C. § 1983 against criminal investigators for inducing prosecution in retaliation for speech).

I conclude that Plaintiff failed to plausibly allege that Sergeant Rodriguez lacked probable cause when he charged Plaintiff with the crime of false reporting. Because Plaintiff did not sufficiently allege a retaliation claim, I do not consider Defendants' additional arguments concerning whether Chief Lopez and Officer Pino had sufficient personal involvement in the retaliation claim.

i.  Plaintiff Did Not Plausibly Allege That She Was Charged Without Probable Cause.

Defendant writes—and Plaintiff does not dispute—that the relevant portion of the code in question reads that:

(a) A person commits false reporting to authorities if he or she:

. . .

(2) Makes a report or knowingly causes the transmission of a report to law enforcement authorities of a crime or other incident within their official concern when he or she knows that it did not occur . . . .

ECF No. 13 at 7–8 (quoting § 8-20-60(a) (2009)). Under the ordinance, a person acts knowingly "when he or she is aware that his or her conduct is of such nature or that

such circumstance exists." *Id.* at 8 n.5 (quoting Monte Vista, Colo., Municipal Code §
8-1-10(a) (2009)).

Defendants argue that the contents of the Amended Complaint show that
Sergeant Rodriguez had probable cause to charge Plaintiff with the crime of false
reporting. *Id.* at 8. They argue that probable cause is shown by Plaintiff's
allegations about the truck near her property, Sergeant Rodriguez's investigation,
Officer Pino's incident report, and the credibility of the witnesses:

> (1) Prior to Sergeant Rodriguez "arriving at Plaintiff's home, Plaintiff had
> observed James Chambers 'driving the same truck' as the one she
> purported had also been driven by Fred Chambers earlier that day, and
> that she also observed James Chambers 'park the truck in the alley[,]'" *id.*
> (citing ECF No. 12 at ¶21);

> (2) "[I]n response to Plaintiff's subsequent report, [Sergeant] Rodriguez
> conducted an extensive investigation into this matter, where it was
> confirmed that Fred Chambers had not been present near Plaintiff's home
> on the morning in question and could therefore not have violated the
> protection order(s), as Plaintiff had previously reported[,]" *id.* (citing ECF
> No. 12 at ¶¶ 23–27);

> (3) Sergeant Rodriguez "observed no indication that Fred Chambers had sped
> down the alley as Plaintiff had reported," *id.* (citing ECF No. 13-2 at 3);

> (4) Officer Pino's prior incident report where he indicated that Fred
> Chambers had not been directly observed, thereby "demonstrating that

Plaintiff likely was aware of the circumstance that Fred Chambers had not violated the terms of the protection order(s) on December 31, 2016[,]" *id.* at 9 (citing ECF No. 13-1); and

(5) Plaintiff made no allegation that the witnesses interviewed by Sergeant Rodriguez should be deemed untrustworthy, *id.*

Defendants add that Plaintiff failed to sufficiently allege the third element of her claim—that Sergeant Rodriguez's actions were substantially motivated as a response to Plaintiff's exercise of her First Amendment speech rights—because it was not the mere act of reporting a crime, but it was her report's alleged falsity that caused her prosecution. *Id.* at 9 n.9.

Plaintiff responds that her Amended Complaint sufficiently alleged the absence of probable cause. ECF No. 20 at 10. She argues that the incident reports are devoid of any mention that Defendants believed that she was aware that she was making a false report of a crime. *Id.* at 11. She contends that in their Motion, Defendants add facts and misstate the incident reports. *Id.* She disputes the reasoning behind Defendants' contention that the alleged inaccuracy of Plaintiff's January 5, 2017 complaint, in consideration with the December 31, 2016 report, led Sergeant Rodriguez to charge Plaintiff with false reporting. *Id.* She states that this rationalization is not found in the incident reports and that Officer Pino's report "clearly identified Ms. Stonefield's *daughter* as the reporting party"—and her daughter was relaying what her younger brother was telling her at the time. *Id.* (citing ECF No. 13-1) (emphasis in original).

"The long-prevailing standard of probable cause protects 'citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime,' while giving 'fair leeway for enforcing the law in the community's protection.'" *Maryland v. Pringle*, 540 U.S. 366, 370 (2003) (quoting *Brinegar v. United States*, 338 U.S. 160, 176 (1949)). The existence of probable cause focuses on particular factual contexts and is not readily reduced to a "neat set of legal rules." *Id.* at 370–71 (quoting *Illinois v. Gates*, 462 U.S. 213, 232 (1983)). However, the substance of probable cause is a "reasonable ground for a belief of guilt." *Id.* at 371 (quoting *Brinegar v. United States*, 338 U.S. at 175). For an officer to be entitled to qualified immunity he need only "arguable probable cause" to arrest. *A.M. v. Holmes*, 830 F.3d 1123, 1139 (10th Cir. 2016) (quoting *Kaufman v. Higgs*, 697 F.3d 1297, 1300 (10th Cir. 2012)).

 I conclude that arguable probable cause existed as alleged for Sergeant Rodriguez to charge Plaintiff with the crime of false reporting. As outlined by Defendants *supra*, Sergeant Rodriguez noted that Plaintiff stated she had seen James Chambers driving the truck. Then, he noted that there was no indication that a truck has sped down the alley as Plaintiff said had happened. Further, he performed an investigation and wrote that evidence showed Fred Chambers to be in a different location at the time of Plaintiff's call.

I note Sergeant Rodriguez's reliance upon Officer Pino's incident report, which indicated that Fred Chambers had not been seen violating the protection orders on December 31, 2016. I am sympathetic to Plaintiff's reasoning that Officer

Pino in fact wrote in the report that Plaintiff's daughter contacted authorities and told Officer Pino that her 10-year-old brother saw Fred Chambers. ECF No. 13-1 at 1. It would then be questionable how this could go towards Plaintiff knowingly reporting false information to authorities. Even if Fred Chambers had indeed not been near the property, Plaintiff expressed concern about the violation of the protection order, but did not advocate that she saw him. ECF No. 13-1 at 1–2.

However, based on the totality of the circumstances of the facts alleged, including the incident reports, it is at least arguable that Plaintiff was aware that she gave false information to authorities. This means that, as alleged, there was at least a reasonable ground for a belief of guilt such that there was not a lack of arguable probable cause. As such, Plaintiff did not plausibly allege a retaliation claim under 42 U.S.C. § 1983 in her Amended Complaint, meaning she has not satisfied the first prong of the qualified immunity analysis which requires that a constitutional violation occurred. The individual Defendants are entitled to qualified immunity on this claim.

## 2. Plaintiff Did Not Sufficiently Allege an Equal Protection Violation.

The Equal Protection Clause essentially states that all similarly situated persons should be treated alike. *A.M. v. Holmes*, 830 F.3d at 1166 (quoting *Kitchen v. Herbert*, 755 F.3d 1193, 1222 (10th Cir. 2014)). Equal protection jurisprudence generally concerns governmental actions related to classes of citizens, but also may be founded on an individual citizen claiming she intentionally has been treated differently. *Id.* (citing cases). These so-called "class of one" equal protection claims

require the individual to "demonstrate (1) that other similarly situated individuals were treated differently from her, and (2) that there is no rational basis for the different treatment." *Id.* at 1167 (quoting *SECSYS, LLC v. Vigil*, 666 F.3d 678, 688–89 (10th Cir. 2012)) (internal alterations and quotations omitted).

Class of one claims are approached with caution to avoid "turning even quotidian exercises of government discretion into constitutional causes." *Id.* (quoting *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215–16 (10th Cir. 2011)). The concern is that the contours of the Equal Protection Clause usually look at groups of citizens, but when only looking at one citizen "there is no way to know whether the alleged difference in treatment was occasioned by legitimate or illegitimate considerations without a comprehensive and largely subjective canvassing of all possible relevant factors." *Id.* (quoting *Jennings v. City of Stillwater*, 383 F.3d 1199, 1213–14 (10th Cir. 2004)) (alteration omitted). To avoid this, a plaintiff must "provide a specific and detailed account of the nature of the preferred treatment of the allegedly favored class." *Id.* (quoting *Jennings*, 383 F.3d at 1214) (alteration omitted).

Defendants argue that Plaintiff's equal protection claim fails under both prongs of the qualified immunity analysis. ECF No. 13 at 12–13. They contend that besides a sole conclusory allegation, Plaintiff's Amended Complaint fails to identify a similarly situated person who was treated differently than her. *Id.* at 12. Further, they argue that there is no relevant authority that could clearly establish that Plaintiff's constitutional rights were violated. *Id.* at 13 n.9. Plaintiff responds that,

at the pleading stage, it would be "nearly impossible" for her to identity other people who have made complaints of criminal conduct but are not arrested. ECF No. 20 at 15. She adds that she should be permitted to conduct further discovery. *Id.* at 16.

I find and conclude that Plaintiff has not sufficiently alleged an equal protection claim. In her Amended Complaint, Plaintiff alleged that "Defendants singled [her] out as a target for improper use of process." ECF No. 12 at ¶ 76. However, Plaintiff did not mention anything further, certainty not nearing the level of providing "a specific and detailed account of the nature of the preferred treatment of the allegedly favored class." *A.M. v. Holmes*, 830 F.3d at 1167. The Tenth Circuit has upheld dismissals at the pleading stage if a plaintiff only provides conclusory allegations that similarly situated parties received different treatment. *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d at 1220 (upholding dismissal when the plaintiff alleged that defendant selectively enforced nuisance laws against it).

The court in *Kansas Penn Gaming, LLC* noted the difference between situations not involving judgments that are "subjective and individualized" and those where "the government actor enjoys a broader range of discretion, and may properly base a decision on a myriad of potentially relevant variables." *Id.* (citing cases). The situations where there is more discretion allow for a higher likelihood of "material distinctions between allegedly similarly situated parties, leading to a ready supply of rational and not wholly arbitrary reasons for differential treatment." *Id.* (quoting *Jicarilla Apache Nation v. Rio Arriba County*, 440 F.3d 1202, 1213 (10th Cir. 2006)) (quotations omitted).

The court added that the plaintiff challenged an act of regulatory enforcement that "implicates a multiplicity of relevant (nondiscriminatory) variables, from the relative culpability of the defendants to the optimal deployment of prosecutorial resources, making it correspondingly more difficult to bring an equal protection claim." *Id.* (quoting *Jennings*, 383 F.3d at 1214–15) (quotation omitted). As discussed *supra*, the existence of probable cause focuses on particular factual contexts and is not readily reduced to a "neat set of legal rules." *Maryland v. Pringle*, 540 U.S. at 370. As such, Plaintiff's conclusory accusation that "Defendants singled [her] out as a target for improper use of process" is not a sufficient allegation that suggests similar persons were treated differently. She did not sufficiently state an equal protection claim. The individual Defendants are entitled to qualified immunity on this claim.

### 3. *Plaintiff Did Not Sufficiently Allege A Due Process Violation.*

Defendants argue that Plaintiff did not sufficiently allege a violation of her Fourteenth Amendment procedural due process rights. ECF No. 13 at 13. Defendants contend that "the Tenth Circuit has refused to extend Fourteenth Amendment due process protections to allegations of criminal charges devoid of probable cause . . . ." *Id.* Defendants also argue that Plaintiff's claim fails both prongs of the qualified immunity analysis. *Id.* Plaintiff responds that a citizen's due process rights under the Fourteenth Amendment may be implicated if they have been imprisoned pursuant to a legal but wrongful process. ECF No. 20 (quoting *Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008)).

"[A] plaintiff who claims that the government has unconstitutionally imprisoned him has at least two potential constitutional claims." *Mondragon v. Thompson*, 519 F.3d at 1082. "The initial seizure is governed by the Fourth Amendment, but at some point after arrest, and certainly by the time of trial, constitutional analysis shifts to the Due Process Clause." *Id.* (quoting *Pierce v. Gilchrist*, 359 F.3d 1279, 1285–86 (10th Cir. 2004)). "If he has been imprisoned pursuant to legal but wrongful process, he has a claim under the procedural component of the Fourteenth Amendment's Due Process Clause analogous to a tort claim for malicious prosecution." *Id.* "[A] § 1983 malicious prosecution claim includes the following elements: (1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages. *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008) (citing *Novitsky v. City of Aurora*, 491 F.3d 1244, 1258 (10th Cir. 2007)).

Plaintiff's claim fails because I conclude, *supra*, that—at the very least— probable cause arguably existed. Additionally, the mere existence of a post-deprivation remedy under Colorado law satisfies due process requirements. *Myers v. Koopman*, 738 F.3d 1190, 1193 (10th Cir. 2013), *as amended on denial of reh'g* (Jan. 8, 2014) ("If a state actor's harmful conduct is unauthorized and thus could not be anticipated pre-deprivation, then an adequate post-deprivation remedy—

such as a state tort claim—will satisfy due process requirements." (citing *Becker v. Kroll*, 494 F.3d at 921)).

In *Myers*, the plaintiff alleged that the defendant "conjured up facts to create the illusion of probable cause for an arrest warrant and subsequent prosecution." *Id.* The *Myers* court explained that "[s]uch lawlessness could not have been anticipated or prevented pre-deprivation, but a post-deprivation malicious-prosecution claim serves as an effective antidote." *Id.* That antidote was a malicious prosecution claim under Colorado state law. *Id.* Thus, as in *Myers*, the "existence of the state remedy flattens the Fourteenth Amendment peg on which [the plaintiff] now tries to hang [her] § 1983 malicious-prosecution claim." *Id.* As such, Plaintiff did not sufficiently allege a procedural due process claim in violation of the Fourteenth Amendment. Thus, the individual Defendants are entitled to qualified immunity on this claim.

### 4. *Plaintiff Does Not Sufficiently Move to Amend Her Complaint.*

Finally, Plaintiff requests that she be able to amend her Complaint a second time if I grant any part of the Motion. ECF No. 20 at 1, 8, 10, 19. However, it is insufficient to "merely suggest[] she should be allowed to amend if the court concluded her pleadings were infirm." *Garman v. Campbell Cty. Sch. Dist. No. 1*, 630 F.3d 977, 986 (10th Cir. 2010) (citing cases). "[A] request for leave to amend must give adequate notice to the district court and to the opposing party of the basis of the proposed amendment before the court is required to recognize that a motion for leave to amend is before it." *In re Gold Res. Corp. Sec. Litig.*, 776 F.3d 1103,

1118 (10th Cir. 2015) (quoting *Calderon v. Kan. Dep't Soc. & Rehabilitation Servs.*, 181 F.3d 1180, 1187 (10th Cir. 1999)).

Here, Plaintiff writes that she should be allowed to amend if she does not "allege sufficient facts showing that the individual Defendants are not entitled to the defense of qualified immunity," and mentions in a footnote that she should be allowed to amend "to assert further facts showing that Defendants had no basis to charge her with filing a false report." ECF No. 20 at 8 n.3, 10. These statements do not sufficiently put Defendants, nor the Court, on notice to the basis of the request. Further, the request does not comply with the Local Rules of Practice. D.C.COLO.LCivR 15.1 ("A party who files an opposed motion for leave to amend or supplement a pleading shall attach as an exhibit a copy of the proposed amended or supplemental pleading which strikes through (e.g., ~~strikes through~~) the text to be deleted and underlines (e.g., underlines) the text to be added.").

## B. The Amended Complaint Did Not Adequately State a Claim for Municipal Liability

In her Amended Complaint, Plaintiff alleged that the City of Monte Vista, through Chief Lopez, was liable for the violations alleged. ECF No 12 at ¶¶ 60–64. However, municipalities cannot be held liable for constitutional violations of its officers if there was no underlying constitutional violation. *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1318 (10th Cir. 2002) (quoting *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993)). As I have concluded that Plaintiff did not allege any underlying constitutional violations in her Amended Complaint, her claims against the City of Monte Vista must fail as well. *Martinez v. Beggs*, 563 F.3d 1082, 1092

(10th Cir. 2009) (municipality dismissed from case when the individual defendants were found to have not violated any constitutional rights).

## IV. CONCLUSION

ACCORDINGLY, the Court ORDERS that Defendants' Motion to Dismiss, ECF No. 13, is GRANTED, the case is DISMISSED WITH PREJUDICE, and costs are awarded to Defendants.

Dated: July 29, 2019 Denver, Colorado.

BY THE COURT:

s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE
